UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In the Matter of the Application of

MOUNT WHITNEY INVESTMENTS, LLLP,
a Nevada limited-liability limited partnership,

                     Plaintiff,

– against –

GOLDMAN MORGENSTERN &
PARTNERS CONSULTING, LLC d/b/a
GOMOPA, a New York limited liability
company; MANFRED RITTER, an
individual; STEFAN ELSTERMANN, an
individual; THOMAS SCHULTE, an
individual; DOES 1-10; and ROES 1-10,

                     Defendants.

**OPINION AND ORDER**
15 Civ. 4479 (ER)

---

Ramos, D.J.:

    Plaintiff Mount Whitney Investments, LLLP ("MWI" or "Plaintiff") brings this suit against Goldman Morgenstern & Partners Consulting, LLC d/b/a GoMoPa ("GoMoPa"), as well as individual defendants Manfred Ritter ("Ritter"), Stefan Elstermann ("Elstermann"), and attorney Thomas Schulte ("Schulte") (collectively "Defendants"), alleging defamation, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), tortious interference with contract, tortious interference with business relations/economic advantage, and breach of contract. Presently before the Court is Defendant GoMoPa's motion to dismiss on *forum non conveniens* grounds. For the reasons set forth below, Defendant GoMoPa's motion is DENIED.

I. **Background**

    a. **The Parties**

Plaintiff MWI is a limited-liability limited partnership, formed under the laws of Nevada. Compl. ¶ 8 (Doc. No. 2). MWI's principal manager is Volker Tabaczek ("Tabaczek"), a resident of Germany. *Id*. at ¶ 22; Compl. Ex. 7. Defendant GoMoPa is a limited liability company formed under the laws of New York. Compl. ¶ 9. Defendants Ritter, Elstermann, and Schulte are residents of Germany. Compl. ¶ 10–12.

    b. **Factual Background[1]**

Plaintiff alleges that in 2014 and early 2015, Defendants engaged in a coordinated scheme intended to extort money from Plaintiff. According to Plaintiff, in 2014 MWI entered into contracts with Defendants Ritter and Elstermann, in which Ritter and Elsterman agreed to provide MWI with certain financial services in exchange for commission payments.[2] Compl. ¶¶ 14, 17. MWI paid Ritter and Elstermann advanced commissions totaling close to thirty thousand dollars. *Id*. at ¶¶ 16, 19. Subsequently, MWI learned that neither Elstermann nor Ritter possessed the licenses or permits necessary to fulfill their duties under the contracts. *Id.* at ¶ 20. MWI maintains that Elstermann and Ritter lied about their qualifications in order to obtain the advanced commissions. *Id*.

Plaintiff further claims that on October 17, 2014, Defendant Schulte, on behalf of his client Defendant Ritter, called for an in-person meeting with MWI's principal manager, Tabaczek, in which Schulte demanded that MWI pay Ritter thirty thousand euros. *Id*. at ¶ 22.

---

[1] The following factual background is based on the allegations in the Complaint, Doc. 2, which are taken as true for the purposes of the instant motion. *See e.g.*, *Rio Tinto PLC v. Vale S.A.*, No. 14 Civ. 3042 (RMB), 2014 WL 7191250, at *3 (S.D.N.Y. Dec. 17, 2014).

[2] The contracts contained forum selection clauses, designating Nevada as the exclusively available forum. Compl. Exs. 1, 3.

2

Schulte informed Tabaczek that if he failed to pay Ritter, Defendants Ritter and Elstermann would use an online platform, owned through Defendant GoMoPa, to launch a smear campaign against Plaintiff.[3]  *Id*.  Tabaczek ultimately refused to pay Ritter.  *Id*. at ¶ 23.

In December 2014, Plaintiff alleges that Defendant Ritter began emailing MWI's business associate, Michael Rudolf.  Compl. ¶ 24.  Plaintiff claims that the emails were hostile towards Rudolf and made a number of false and baseless statements about MWI and Tabaczek, including accusations that MWI and Tabaczek were, *inter alia*:  (i) engaging in fraud and violating of SEC regulations; (ii) violating investor agreements; (iii) intentionally causing investments in the U.S.to "disappear"; and (iv) destroying evidence regarding investments.  *Id*. at ¶ 24–25.  Plaintiff maintains that the emails also threatened "unwarranted legal action" against MWI.  *Id*. at ¶ 29.

Between December 2014 and February 2015, Plaintiff claims that Defendant Elstermann published articles on Defendant GoMoPa's website containing defamatory statements against MWI, MWI's business associates, Tabaczek, and Tabaczek's wife.[4]  *Id*. at ¶ 30; *Id*. at ¶¶ 34–35; *see* Compl. Exs. 7, 9.  Elstermann also allegedly threatened to file baseless complaints of fraud and other wrongful acts against MWI and Tabaczek with various regulatory authorities.  *Id*. at ¶ 31.  Moreover, Plaintiff claims Elstermann and Ritter encouraged their clients to file similar complaints against Tabaczek and his wife.  *Id*. at ¶ 32.

---

[3] GoMoPa denies that Defendants Ritter or Elsterman have ever been principals, agents, managers, members, employees of, or otherwise affiliated with GoMoPa.  *See* Def. GoMoPa's Am. Answer to the Compl. ¶10 (Doc. 39).  GoMoPa also denies that Schulte is or ever has been an employee, manager, or member of GoMoPa, but admits that Schulte has at times been retained as counsel by GoMoPa.  *Id*. at ¶ 27.

[4] The allegedly false statements include that Mr. Tabaczek has multiple criminal convictions, is wanted by the FBI, is prohibited from entering the United States, and that he and his wife are engaged in various criminal activities.  Compl. ¶ 30, 36–38.

In addition to finding these accusations in articles on GoMoPa's website, MWI discovered another website, "criminals.cc" reiterating many of the same accusations. *Id*. at ¶ 46. MWI maintains Defendants are also responsible for the accusations on criminals.cc. *Id*. at ¶ 47.[5]

Finally, MWI claims that Defendants are responsible for sending unsolicited communications to MWI's employees and prospective clients in order to damage MWI's reputation and hinder its business ventures. Compl. ¶¶ 52–54. Some of the messages allegedly mischaracterized a 2008 German court decision, "to falsely portray Mr. Tabaczek as having been convicted of fraud and portray Mr. Tabaczek in a false light to investors and other business associates[.]" *Id*. at ¶¶ 51, 52–55. Plaintiff claims Defendants' conduct resulted in MWI losing a five million dollar investment. *Id*. at ¶¶ 56.

Plaintiff asserts that Defendants' alleged wrongdoings are part of "an ongoing operation of extorting money from business professionals by publishing false and defamatory content, then offering to remove the subject content in exchange for money payoffs[.]" *Id*. at ¶ 33. Defendant GoMoPa now moves to dismiss Plaintiff's claims on *forum non conveniens* grounds.[6] Def. GoMoPa's Mot. to Dismiss (Doc. No. 58). GoMoPa argues that Germany would be a more appropriate forum. *See* Def. GoMoPa's Mem. of Law in Supp. at 2 (Doc. No. 60).

## II. Legal Standard

The doctrine of *forum non conveniens* allows a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim." *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 254 (S.D.N.Y. 2007) (quoting *Carey v. Bayerische Hypo–*

---

[5] GoMoPa denies any relationship between it and the website criminals.cc. Def. GoMoPa's Answer to the Compl. ¶ 35.

[6] None of the other Defendants join GoMoPa's motion. Defendant Schulte has filed an independent motion to dismiss on *forum non conveniens* grounds, as well as other grounds, which the parties have not yet fully briefed; Defendant Elstermann has appeared and answered the Complaint; and Defendant Ritter has not made any appearance in this action.

*und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004)). "A decision to grant or deny a motion to dismiss a cause of action under the doctrine of *forum non conveniens* lies wholly within the broad discretion of the district court." *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996). The Second Circuit has "outlined a three-step process to guide the exercise of that discretion." *Norex Petroleum Ltd. v. Access Indus., Inc*, 416 F.3d 146, 153 (2d. Cir. 2005) (citing *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc)). First, "a court determines the degree of deference properly accorded the plaintiff's choice of forum." *Id*. Second, "it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id*. And third, "a court balances the private and public interests implicated in the choice of forum." *Id*.

### III.  Discussion

#### a.  Degree of Deference to MWI's Choice of Forum

A Defendant who invokes *forum non conveniens* generally bears "a heavy burden" in opposing plaintiff's chosen forum. *Sinochem Int'l. Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). When reviewing a *forum non conveniens* motion, courts start with "a strong presumption" in favor of the plaintiff's forum choice. *Norex*, 416 F.3d at 154 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). In applying this presumption, however, "'the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale' depending on the convenience reflected by the given choice." *Palacios*, 757 F. Supp. 2d at 352, (quoting *Iragorri,* 274 F.3d at 71). The Second Circuit in *Iragorri* explains the sliding-scale analysis:

> [T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the

5

> defendant to gain dismissal for *forum non conveniens*. . . . On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands[.]

*Iragorri*, 274 F.3d at 71–72.  In short, courts give greater deference to a plaintiff's chosen forum when that choice is motivated by convenience and give less deference when the plaintiff is merely seeking a tactical advantage.  When undergoing this sliding-scale analysis, courts are guided by *Iragorri*'s convenience and forum shopping factors.  *Norex*, 416 F.3d at 154–55.

*Iragorri*'s convenience factors are:  "[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense."  *Norex*, 416 F.3d at 155 (quoting *Iragorri*, 274 F.3d at 72).  Conversely, *Iragorri*'s forum shopping factors are:  "[1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum."  *Norex*, 416 F.3d at 155 (quoting *Iragorri*, 274 F.3d at 72).

Here, GoMoPa acknowledges that a plaintiff's forum choice is ordinarily owed deference, but argues that "no deference is due when none of the operative facts occurred in the plaintiff's chosen venue."  Def. GoMoPa's Mem. of law in Supp. at 3 (citing *Norex*, 416 F.3d 146).  However, GoMoPa's argument mischaracterizes Second Circuit case law.  In fact, *Norex*, the case GoMoPa cites for this argument, explicitly held that courts must consider the totality of circumstances in determining how much deference to give a plaintiff's forum choice.  416 F.3d at 154.  Moreover, in *Iragorri* itself the Second Circuit held that the District Court erred by not

6

according appropriate deference to the plaintiff's choice to bring its suit in Connecticut even though all of the operative facts took place in Cali, Colombia.  274 F.3d at 75.  Accordingly, the Court must review all relevant *Iragorri* factors, even if the underlying facts took place outside New York.

With regard to the convenience factors, Plaintiff argues that it chose New York because it offered jurisdictional convenience, convenient access to digital evidence, and because it is more convenient than GoMoPa's preferred forum in Germany.  Pl.'s Mem. in Opp. at 6–8.

First, New York is GoMoPa's home forum, and thus New York courts have clear jurisdictional authority over GoMoPa.  MWI's choice of GoMoPa's home forum does not, by itself, warrant a presumption of convenience.  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003).  However, when a plaintiff's forum choice is "made to obtain jurisdiction over defendant[,] . . . substantial deference [is] generally appropriate."  *Norex*, 416 F.3d at 156 (quoting *Pollux*, 329 F.3d at 74).  Here, MWI avers it explicitly chose to litigate in New York in order to ensure jurisdiction over GoMoPa.  Pl.'s Mem. in Opp. at 6.  Thus, the Court finds that GoMoPa's amenability to suit in New York favors Plaintiff's choice of forum.

Furthermore, access to relevant digital evidence in this case, including registry information for gomopa.net and criminals.cc, as well as evidence held by Facebook is housed within the U.S. and is likely easily attainable in the U.S.  Pl.'s Mem. in Opp. at 8.  Accordingly, the Court finds that MWI could reasonably have been motivated by evidentiary convenience when choosing to litigate in New York.

Finally, although Plaintiff's home state is Nevada, Plaintiff's choice of New York is certainly more convenient than GoMoPa's preference for Germany.

With regard to the forum shopping factors, the Court has no reason to believe that the chosen forum would be inconvenient or cause unnecessary expense to GoMoPa, given that it is a New York company. The Court does recognize "that the possibility of a RICO treble damages award might have made the choice of a United States forum attractive" to MWI, apart from convenience. *Norex*, 416 F.3d at 155. But the possibility of RICO treble damages alone does not support a finding of forum shopping, and need not be accorded much weight in light of the other factors in this case. *Id*.

Because the Court finds that Plaintiff's choice of forum was more likely motivated by convenience, rather than forum shopping, Plaintiff's choice of forum shall be accorded deference in this case.

### b. Adequate Alternative Forum

The Court's deference to Plaintiff's forum choice does "not necessarily preclude *forum non conveniens* dismissal." *Norex*, 416 F.3d at 157. Rather, it "simply recalibrate[s] the balance for purposes of the remaining analysis." *Id*. To be successful on a motion to dismiss on *forum non conveniens* grounds, "a movant must demonstrate the availability of an adequate alternative forum." *Id*. (citing *Pollux*, 329 F.3d at 75). In order for an alternative forum to be adequate, it must satisfy two requirements. First, all defendants must be amenable to service of process in the alternative forum. *Norex*, 416 F.3d at 157; *Rio Tinto PLC v. Vale S.A.*, No. 14 Civ. 3042 (RMB), 2014 WL 7191250, at *13 (S.D.N.Y. Dec. 17, 2014) (for an alternative forum to be adequate, "a court must satisfy itself that the litigation may be conducted elsewhere against *all defendants*.") (citing *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998) (emphasis added). And second, the alternative forum must permit litigation of the subject matter of the dispute. *Norex*, 416 F.3d at 157. However, "'the availability of an adequate

8

alternative forum does not depend on the existence of the identical cause of action in the other forum,' nor on identical remedies." *Id.* (quoting *PT United*, 138 F.3d at 74).

Here, all Defendants are amenable to service of process in German courts. Schulte, Ritter, and Elstermann are domiciliaries of Germany, Compl. ¶ 10–12, and GoMoPa has declared it will submit to a German court's jurisdiction for this matter, Decl. of Klaus Maurischat at ¶ 7 (Doc. 59).

As to whether German courts permit litigation of the subject matter of this dispute, MWI argues it cannot litigate this case in Germany because its RICO claim is unavailable outside of the U.S. Pl.'s Mem. in Opp at 9–11. However, as noted *supra*, "[t]he availability of an adequate alternate forum does not depend on the existence of the identical cause of action in the other forum." *In re Eur. Aeronautic Defence & Space Co. Sec. Litig.*, 703 F. Supp. 2d 348, 360 (S.D.N.Y. 2010) (quoting *PT United*, 138 F.3d at 74). Differences between American law and the foreign forum's law "'should ordinarily not be given conclusive or even substantial weight' in assessing the adequacy of the forum." *In re Eur. Aeronautic Defence*, 703 F. Supp. 2d at 360 (quoting *Piper*, 454 U.S. at 249). Federal courts frequently dismiss RICO actions on *forum non conveniens* grounds when defendants offer an adequate alternative. *See, e.g.*, *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987) (finding plaintiff's argument that RICO claims cannot be dismissed on *forum non conveniens grounds* "unpersuasive," and deeming a fraud action to be an adequate substitute). While "few foreign jurisdictions provide such an expansive civil vehicle for parties injured by ongoing criminal schemes, . . . most foreign jurisdictions provide alternative legal actions to address the wrongdoing encompassed by civil RICO." *Norex*, 416 F.3d at 157.

Here, GoMoPa provides a number of potential German causes of action targeted at the same wrongdoings claimed by MWI. Specifically, for MWI's RICO claim, GoMoPa points to Sections 240 and 253 of the German Criminal Code, which define extortion and blackmail, respectively. GoMoPa's Reply Mem. of Law in Supp. at 3 n.2. Similarly, for MWI's defamation claims, GoMoPa offers sections 185 through 200 of the German Criminal Code. *Id*. Civil relief for the above offenses is available under Section 823 of the German Civil Code, which allows for damages when someone intentionally or negligently violates another's rights, and section 1004 of the Civil Code, which allows for injunctive relief. BÜRGERLICHES GESETZBUCH [BGB] [CIVIL CODE], §§ 823, 1004, *translation at* http://www.gesetze-im-internet.de/englisch_bgb/index.html (Ger.). Additionally, regarding MWI's tortious interference claims, "the unlawful, intentional, and malicious interference with specific contracts of other persons are torts recognized by the German Civil Code."[7] *Kirch v. Liberty Media Corp.*, No. 04 Civ. 667 (NRB), 2006 WL 3247363, at *5 (S.D.N.Y. Nov. 8, 2006).

Because all Defendants would be amenable to service in Germany, and because Germany would permit litigation of this dispute, the Court finds that Germany is an adequate alternative forum for this case.

### c. Private and Public Interest Factors

After finding that Germany is an adequate alternative forum, this Court's inquiry "turns to the balance of public and private interests 'to determine whether the convenience of the parties

---

[7] MWI argues it cannot litigate its breach of contract claims against Ritter and Elstermann in Germany because both Defendants signed a forum selection clause in the contract at issue selecting Nevada as the exclusively available forum. Pl.'s Mem. in Opp. at 11–12. MWI admits that the discrepancy between the clause's chosen forum and MWI's decision to bring its breach of contract claims in New York "might offer grounds for a jurisdictional transfer pursuant to 28 U.S.C. § 1494(a)," but maintains that the clause "completely forecloses the prospect" of bringing its breach of contract claims in Germany. *Id.* at 12. However, bringing suit in Germany does not foreclose the breach of contract claims any more than bringing suit in New York does, given that the forum selection clause could be enforced regardless of which jurisdiction the suit is asserted in.

and the ends of justice would best be served by dismissing the action.'" *Kirch*, 2006 WL 3247363, at *7 (quoting *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 293 (2d Cir. 1996)). That is, a defendant must demonstrate that "trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience," or that litigating in the chosen forum is inappropriate upon consideration of the public interests. *Sinochem*, 549 U.S. at 429 (citing *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–448 (1994)) (alterations omitted). Defendants bear the burden of establishing that "the balance of private and public interest factors tilts heavily in favor of the alternative forum." *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 135 (2d Cir. 2005); *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 74 (2d Cir. 1998).

This Court must first consider "the private interest factors– those which reflect the convenience with which the parties may litigate here." *Kirch*, 2006 WL 3247363, at *7. The private interest factors include: (1) the relative ease of access to sources of proof, (2) the cost of obtaining attendance of willing witnesses, (3) availability of compulsory process for attendance of unwilling witnesses, and (4) all other problems that make the trial of a case easy, expeditious, and inexpensive. *Iragorri*, 274 F.3d at 73–74.

GoMoPa makes two arguments for why the private interest factors tip in its favor: (1) all the potential witnesses reside in Germany; and (2) all of the documentary evidence is written in German. GoMoPa's Reply Mem. of Law in Supp. at 7–8. However, while it is true that all of the individual Defendants reside in Germany, GoMoPa fails to offer any reason why the costs associated with their attendance at trial in New York would be so oppressive or vexatious to support dismissal. *See Taub v. Marchesi Di Barolo S.P.A.*, No. 09 Civ. 599 (ADS), 2009 WL 4910590, at *3 (E.D.N.Y. Dec. 10, 2009) (holding that the moving party failed to satisfy its

11

burden of demonstrating that the private interests tilted in its favor because it "provided the Court with very limited information regarding its [foreign] witnesses."). "While parties are not required to submit detailed affidavits identifying witnesses they would call, they must provide enough information to enable the District Court to balance the parties' interests." *Id.* (quoting *Cromer Fin. Ltd. v. Berger*, 158 F. Supp. 2d 347, 359 (S.D.N.Y. 2001) (internal quotation marks omitted).[8] Thus, GoMoPa's mere claim that all potential witnesses reside in Germany cannot, without more, tilt the balance of interests in its favor.

As to the documentary evidence in this case, MWI has already translated a large portion of it into English. *See, e.g.*, Doc. 34 Exs. 1–14. Accordingly, it does not appear that GoMoPa faces any evidentiary hurdles that could be considered "oppressive" or "vexatious." *See Kislin v. Dikker*, No. 14 Civ. 237 (PGG), 2015 WL 410246, at *2 (S.D.N.Y. Jan. 16, 2015) (adopting the magistrate judge's reasoning that the defendant failed to demonstrate oppressiveness or vexation because, among other things, the defendant failed to show how the cost of transporting and translating relevant documents would be substantial); *see also DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002) (refraining from according much weight to the fact that the bulk of relevant documentary evidence was in a foreign forum because the defendants "failed to explain how transporting the documents or copies of them would be "oppressive" or "vexatious").

For these reasons, the Court finds that GoMoPa has failed to demonstrate that the private interest factors tilt heavily, if at all, in its favor. *See Massaquoi v. Virgin Atlantic Airways*, 945

---

[8] GoMoPa provides no argument regarding non-party witnesses. However, if non-party witnesses exist, GoMoPa has not shown that live testimony from potential non-party witnesses "is especially important in this case," or that any potential non-party witnesses "would be unwilling to submit to deposition or to travel here voluntarily to testify, or that there is not an alternative means of obtaining their evidence." *Kislin v. Dikker*, No. 14 Civ. 237 (PGG) (JCF), 2015 WL 410246, at *4 (S.D.N.Y. Jan. 16, 2015) (alterations omitted).

F. Supp. 58, 62 (S.D.N.Y. 1996) ("[T]he fact that many witnesses and documents relevant to the case are located [abroad] is not enough to favor a trial in [the foreign forum].").

Next, the Court turns to the public interest factors: "(1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; and (3) avoiding the burden on jurors by having them decide cases that have no impact on their community." *Iragorri*, 274 F.3d at 74.

As an initial matter, the second and third factors do not support dismissal because the Court is not tasked with applying foreign law in this matter and MWI has not demanded a jury trial. Regarding the first factor, GoMoPa argues that the dispute is local to Germany, given that the allegedly defamatory statements were written and published in the German language, to a German audience, and concerned MWI's principal manager and his family, who are German residents. Likewise, Plaintiff's principal manager and the individual Defendants are German citizens. Finally, Schulte's purported demand for thirty thousand euros, the basis for MWI's RICO claim, allegedly took place during a meeting in Schulte's Berlin office.

The Court also notes, however, that GoMoPa is a New York entity, and the citizens of New York have an interest in settling disputes in which its citizens or entities are alleged to have been involved in extorting and defaming U.S. plaintiffs. *See Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 532 (S.D.N.Y. 1997) (holding that New York clearly had a substantial interest in resolving a dispute in which foreign plaintiffs alleged that a "large New York-based insurance company" engaged in a fraudulent scheme). The Court thus finds that the public interest factors also do not tilt "heavily" in favor of a German forum.

Because GoMoPa has failed to overcome the deference due to Plaintiff's choice of forum, it has not satisfied its burden to obtain dismissal on *forum non conveniens* grounds.

## IV. Conclusion

For the reasons set forth above, Defendant GoMoPa's motion to dismiss is DENIED. The parties are directed to appear for a conference on May 13, 2016, at 12:00 pm. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 58.

It is SO ORDERED.

Dated:   May 2, 2016
         New York, New York

                                                            _____
                                                            Edgardo Ramos, U.S.D.J.