UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MOUNT WHITNEY INVESTMENTS, LLLP,
a Nevada limited-liability limited partnership,

                                   Plaintiff,

– against –

GOLDMAN MORGENSTERN &
PARTNERS CONSULTING, LLC d/b/a
GOMOPA, a New York limited liability
company; MANFRED RITTER, an
individual; STEFAN ELSTERMANN, an
individual; THOMAS SCHULTE, an
individual; DOES 1-10; and ROES 1-10,

                                   Defendants.

**<u>OPINION AND ORDER</u>**

15 Civ. 4479 (ER)

<u>Ramos, D.J.:</u>

  Plaintiff Mount Whitney Investments, LLLP ("MWI" or "Plaintiff") brings this suit against Goldman Morgenstern & Partners Consulting, LLC d/b/a GoMoPa ("GoMoPa"), as well as individual defendants Manfred Ritter ("Ritter"), Stefan Elstermann ("Elstermann"), and attorney Thomas Schulte ("Schulte") (collectively "Defendants"), alleging defamation, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), tortious interference with contract, tortious interference with business relations/economic advantage, and breach of contract.  Before the Court is Defendant Schulte's motion to dismiss for lack of personal jurisdiction, or in the alternative, on *forum non conveniens* grounds.  For the reasons set forth below, Schulte's motion is GRANTED.

## I.  Background

### a.  The Parties

Plaintiff MWI, an investment company, is a limited liability limited partnership ("LLLP") formed under the laws of Nevada and with its principal place of business located in Las Vegas.  Complaint (Doc. 2) ¶ 8.  MWI's principal manager is Volker Tabaczek ("Tabaczek"), a citizen and resident of Germany.  *Id*. at ¶ 22; Complaint Ex. 7.  Defendant GoMoPa is a limited liability company formed under the laws of New York.  *Id*. at ¶ 9.  Defendants Ritter, Elstermann, and Schulte are residents of Germany.  *Id*. at ¶¶ 10–12.  Schulte is an attorney with a practice in Germany.  *Id.* at ¶ 2.

### b.  Factual Background[1]

Plaintiff alleges that in 2014 and early 2015, Defendants engaged in a coordinated scheme intended to extort money from Plaintiff.  According to Plaintiff, in 2014 MWI entered into contracts with Defendants Ritter and Elstermann, in which Ritter and Elsterman agreed to provide MWI with certain financial services in exchange for commission payments.[2]  *Id*. at ¶¶ 14, 17.  MWI paid Ritter and Elstermann advanced commissions totaling close to thirty thousand dollars.  *Id*. at ¶¶ 16, 19.  Subsequently, MWI learned that neither Elstermann nor Ritter possessed the licenses or permits necessary to fulfill their duties under the contracts.  *Id.* at ¶ 20.  MWI maintains that Elstermann and Ritter lied about their qualifications in order to obtain the advanced commissions.  *Id*.

---

[1] The following facts are drawn from allegations contained in the Complaint (Doc. 2), which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The Court can also consider Plaintiff's and Schulte's accompanying submissions, (Docs. 34, 72, 80) in considering Schulte's Rule 12(b)(2) motion.  *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) ("[I]n reviewing a Rule 12(b)(2) motion, a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists") (internal quotation marks omitted).

[2] The contracts contained forum selection clauses, designating Nevada as the exclusively available forum.  Compl. Exs. 1, 3.

Plaintiff further claims that on October 7, 2014, Schulte, on behalf of his client Ritter, called for an in-person meeting with Tabaczek in Germany, in which Schulte demanded that MWI pay Ritter thirty thousand euros. *Id.* at ¶ 22. Schulte informed Tabaczek that if he failed to pay Ritter, Ritter and Elstermann would use an online platform, Gomopa.net, owned through GoMoPa, to launch a smear campaign against Plaintiff.[3] *Id.* Tabaczek ultimately refused to pay Ritter. *Id.* at ¶ 23.

In December 2014, Plaintiff alleges that Ritter began emailing MWI's business associate, Michael Rudolf. *Id.* at ¶ 24. Plaintiff claims that the emails were hostile towards Rudolf and made a number of false and baseless statements about MWI and Tabaczek, including accusations that MWI and Tabaczek were, *inter alia*: (i) engaging in fraud and violating SEC regulations; (ii) violating investor agreements; (iii) intentionally causing investments in the United States to disappear; and (iv) destroying evidence regarding investments. *Id.* at ¶¶ 24–26. Plaintiff maintains that the emails also threatened "unwarranted legal action" against MWI. *Id.* at ¶ 29.

Between December 2014 and February 2015, Plaintiff claims that Elstermann published articles on GoMoPa's website containing defamatory statements against MWI, MWI's business associates, Tabaczek, and his wife.[4] *Id.* at ¶¶ 30, 34–35; *see* Complaint Exs. 7, 9. Elstermann also allegedly threatened to file baseless complaints of fraud and other wrongful acts against MWI and Tabaczek with various regulatory authorities. *Id.* at ¶ 31. Plaintiff further claims Elstermann and Ritter encouraged their clients to file similar complaints against Tabaczek and his wife. *Id.* at ¶ 32.

---

[3] GoMoPa denies that Schulte is or ever has been an employee, manager, or member of GoMoPa, but admits that Schulte has at times been retained as counsel by GoMoPa. GoMoPa's Am. Answer to the Compl. at ¶ 27.

[4] The allegedly false statements include that Tabaczek has multiple criminal convictions, is wanted by the FBI, is prohibited from entering the United States, and that he and his wife are engaged in various criminal activities. Compl. at ¶¶ 30, 36–38.

3

Finally, MWI claims that Defendants are responsible for sending unsolicited communications to MWI's employees and prospective clients in order to damage its reputation and hinder its business ventures. *Id*. at ¶¶ 52–55. Some of the messages allegedly mischaracterized a 2008 German court decision, "to falsely portray Mr. Tabaczek as having been convicted of fraud and portray Mr. Tabaczek in a false light to investors and other business associates." *Id*. at ¶¶ 51, 52–55. Plaintiff claims Defendants' conduct resulted in MWI losing a five million dollar investment. *Id*. at ¶ 56.

Plaintiff asserts that Defendants' alleged wrongdoings are part of "an ongoing operation of extorting money from business professionals by publishing false and defamatory content, then offering to remove the subject content in exchange for money payoffs." *Id*. at ¶ 33.

## II.   Procedural Background

Plaintiff initiated the instant action on June 9, 2015, seeking injunctive relief and damages. (Doc. 1). On December 9, 2015, Schulte requested a pre-motion conference before filing a motion to dismiss, which was held on December 30, 2015. (Doc. 40). On February 8, 2016, GoMoPa filed a motion to dismiss on *forum non conveniens* grounds. (Doc. 57). The Court denied the motion on May 2, 2016 finding that although Germany was an adequate forum, GoMoPa – being a New York entity – had failed to overcome the deference owed to Plaintiff's choice of a New York forum. *See Matter of the Application of Mt. Whitney Investments, LLLP*, No. 15 Civ. 4479 (ER), 2016 WL 1737109 (S.D.N.Y. May 2, 2016).

On April 1, 2016,[5] Schulte filed the instant motion to dismiss arguing that this Court should dismiss Plaintiff's claims for lack of personal jurisdiction, or in the alternative, on *forum non*

---

[5] Defendant's motion to dismiss was originally filed on April 1, 2016 (Doc. 71), but was refiled on May 13, 2016 due to a filing error (Doc. 78).

*conveniens* grounds.[6] (Doc. 71). Specifically, Schulte claims that this Court does not have jurisdiction over him because he has no ties to New York and argues that Germany is a more appropriate forum. *See* Memorandum of Defendant Schulte in Support of Motion to Dismiss ("Def. Memo.") (Doc. 80) ¶ 30.

## III.   Legal Standards

### A.   <u>Rule 12(b)(2) Motion to Dismiss:  Lack of Personal Jurisdiction</u>

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). The Court construes all of the plaintiff's allegations as true and resolves all doubts in its favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). As stated, courts may rely on additional materials outside the pleading

---

[6] None of the other individual Defendants join Schulte's motion. Elstermann has appeared and answered the Complaint; (Doc. 31), but Ritter has not made any appearance in this action.

when ruling on 12(b)(2) motions.  *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

    **B.  _Forum Non Conveniens_**

       The doctrine of *forum non conveniens* allows a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim."  *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 254 (S.D.N.Y. 2007) (quoting *Carey v. Bayerische Hypo– und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004)).  "A decision to grant or deny a motion to dismiss a cause of action under the doctrine of *forum non conveniens* lies wholly within the broad discretion of the district court."  *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996).  The Second Circuit has "outlined a three-step process to guide the exercise of that discretion."  *Norex Petroleum Ltd. v. Access Indus., Inc*, 416 F.3d 146, 153 (2d. Cir. 2005) (citing *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc)).  First, "a court determines the degree of deference properly accorded the plaintiff's choice of forum."  *Id*.  Second, "it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute."  *Id*.  And third, "a court balances the private and public interests implicated in the choice of forum."  *Id*.

## IV.  Discussion

### a.  Personal Jurisdiction

       Personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits.  *Whitaker*, 261 F.3d at 208 (2d Cir. 2001) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)).  This determination involves a two-step analysis.  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).  In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general

jurisdiction statute, New York Civil Practice Law and Rules ("C.P.L.R.") § 301.  Plaintiffs

asserting RICO claims against foreign defendants may also rely on the long-arm statute of the

state in which the suit is filed, here, C.P.L.R. § 302(a).  *See Elsevier, Inc. v. Grossman*, 77 F.

Supp. 3d 331, 343 (S.D.N.Y. 2015).  If and only if the Court's exercise of personal jurisdiction is

deemed appropriate according to New York law, the second step is an evaluation of whether the

Court's exercise of personal jurisdiction comports with the Fifth Amendment Due Process

Clause of the United States Constitution.  *Chloé*, 616 F.3d at 164; *Best Van Lines, Inc. v. Walker*,

490 F.3d 239, 242 (2d Cir. 2007).  Where, as here, the court does not conduct an evidentiary

hearing, a plaintiff need only allege facts sufficient for a *prima facie* showing of jurisdiction.  *See*

*M. Shanken Commc'ns, Inc. v. Variant Events, LLC*, No. 10 Civ. 4747 (CM), 2010 WL 4159476,

at *3 (S.D.N.Y. Oct. 7, 2010) (citing *DiStefano v. Carozzi N.A., Inc.*, 286 F.3d 81, 84 (2d Cir.

2001)).

### i.   <u>Section 301</u>

In the Complaint – though not in its briefing – Plaintiff claims that the Court may assert

personal jurisdiction over Schulte pursuant to New York's long arm statute:  C.P.L.R. § 301.

Complaint ¶ 3.  "For an individual, the paradigm forum for the exercise of general jurisdiction is

the individual's domicile."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

924 (2011); *see also Magdalena v. Lins*, 999 N.Y.S.2d 44, 45 (1st Dep't. 2014) (holding that a

defendant was not subject to the court's general jurisdiction because she was domiciled in

Uruguay).  Here, it is not disputed that Schulte resides in Germany and is therefore, not

domiciled in New York.  *See* Complaint ¶ 12 ("Defendant Schulte is an individual residing in

Germany"); Declaration of Dr. Thomas Schulte in Support of Motion ("Schulte Decl.") (Doc.

72) ¶ 1.  Accordingly, there is no basis for the Court to exercise general jurisdiction over him.

ii.   **Section 302(a)**

Under Section 302(a), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent:  (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . . except as to a cause of action for defamation of character arising from the act;" or (3) "commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state."  C.P.L.R. § 302(a)(1)-(4).  Plaintiff argues that Schulte is subject to the Court's jurisdiction under § 302(a)(2) and § 302(a)(3)(ii).

As an initial matter, Sections 302(a)(2) and (3) expressly "exempt from their scope causes of action for defamation" of character.  *Epstein v. Thompson*, No. 09 Civ. 8696 (HB), 2010 WL 3199838, at *2 (S.D.N.Y. Aug. 12, 2010) (citing to *Best Van Lines, Inc.*, 490 F.3d at 244-45 (noting that New York "explicitly exempt[s] causes of action for the tort of defamation from their scope, whether or not such jurisdiction would be consistent with due process protection").  To determine whether a plaintiff's claim "sounds in defamation," courts must look to the "substance, not merely the name of a claim."  *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 231 (S.D.N.Y. 2015); *see also Dupont v. New Jersey State Police*, No. 08 Civ. 10220 (DLC), 2009 WL 2486052, at *9 (S.D.N.Y. Aug. 14, 2009) ("The defamation exception . . . applies to allegations that in fact sound in defamation, not just

allegations that explicitly bear a defamation label.").  Where the entire claim sounds in defamation, a plaintiff "may not evade the statutory exception" under Sections 302(a)(2) and (3) "by recasting their cause of action as something other than defamation."  *G31000 N. Am., Inc. v. Paris*, No. 14 Civ. 3885 (VEC), 2014 WL 6604790, at *2 (S.D.N.Y. Nov. 21, 2014) (citing *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996)).

Here, Plaintiff asserts six causes of action against Schulte:  (1) libel, (2) slander, (3) injurious falsehood, (4) tortious interference with contract, (5) tortious interference with business relations/economic advantage, and (6) extortion, as the predicate act in a civil RICO claim ("extortion claim").  Complaint ¶¶ 58-99.  The majority of these claims are either defamation claims or "sound in defamation" and thus, jurisdiction pursuant to either § 302(a)(2) or (3) does not apply.  *See Cantor Fitzgerald, L.P.*, 88 F.3d at 157 (holding in defamation case that plaintiffs' additional claims of injurious falsehood and tortious interference did not independently establish personal jurisdiction under sections (2) and (3)); *see also Reich v. Lopez*, 38 F. Supp. 3d 436, 458 (S.D.N.Y. 2014) (finding that plaintiffs' claims including "tortious interference with prospective economic advantage, trade libel, and injurious falsehood" were subject to the defamation exception of sections 302(a)(2) and 302(a)(3) because "the entire complaint sounded in defamation").  As a result, personal jurisdiction over Schulte pursuant to § 302(a)(2) or (3) exists, if at all, only with respect to Plaintiff's extortion claim.[7]

---

[7] Presumably because § 302(a)(2) and (3) exempt defamation claims, Schulte first argues that the Court does not have personal jurisdiction pursuant to § 302(a)(1).  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) ("[W]hen a person utters a defamatory statement without the state that causes injury to the plaintiff within the state, jurisdiction may be acquired under section 302(a)(1)").  Plaintiff does not challenge this claim, and the Court agrees that it cannot confer jurisdiction over Schulte pursuant to § 302(a)(1).

To determine whether jurisdiction under § 302(a)(1) exists, a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction.  *See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006).  "New York courts do not interpret 'transact[ing] business' to include mere defamatory utterances sent into the state."  *Best Van Lines*, 490 F.3d at 248.  In defamation cases, the single act of uttering a defamation, "no matter how loudly, is not a 'transact[ion of]

1. **Section 302(a)(2)**

Pursuant to Section 302(a)(2), a court may exercise personal jurisdiction over a non-domiciliary who "commits a tortious act within the state" "either in person or through an agent." C.P.L.R. § 302(a)(2).  "The Second Circuit has held that the law in New York State with regard to personal jurisdiction under Section 302(a)(2) is clear:  personal jurisdiction arises under this section only pursuant to actions taken while *physically within New York State*."  *Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012) (emphasis added) (citing *Bensusan Restaurant Corp.*, 126 F.3d at 27–29).

Here, nothing in the record suggests – and Plaintiff does not allege – that Schulte (or Elsterman or Ritter) was physically present in New York at the time the alleged tort was committed.  Indeed, Plaintiff alleges that Schulte attempted to extort money from Tabaczek during a meeting in Germany.  Complaint ¶ 22.  Moreover, Schulte stated in a sworn declaration that he had never been to the United States.  Schulte Decl. ¶ 3.  *See Madison Capital Markets, LLC v. Starneth Europe B.V.*, No. 15 Civ. 7213 (RWS), 2016 WL 4484251, at *9 (S.D.N.Y. Aug. 23, 2016) (finding no personal jurisdiction pursuant to § 302(a)(2) because "all the original events giving rise to plaintiff's purported injuries occurred in Florida, The Netherlands, and in Canada"); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 424 (S.D.N.Y. 2010) ("There is no suggestion that either [plaintiff] was ever physically present in New York and thus the statute apparently does not apply at all."); *see also Overseas Media, Inc. v. Skvortsov*, 277

---

business' that may provide the foundation for personal jurisdiction.  In other words . . . more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it." *Id.* The posting of defamatory material on a website accessible in New York does not, without more, constitute transacting business in New York for the purposes of jurisdiction.  *See Competitive Techs., Inc. v. Pross*, 14 Misc. 3d 1224(A) (Sup. Ct. 2007) ("[I]n order to exercise personal jurisdiction over a non-resident defendant, something more than the mere posting of information on a passive web site is required to indicate that the defendant purposefully directed his activities at the forum state.").

Fed. App'x 92, 95-96 (2d Cir. 2008) (affirming dismissal of claim against non-resident defendant when the defendant was in Russia, not New York, when allegedly committing the tort).

Accordingly, the Court cannot exercise jurisdiction over Schulte under § 302(a)(2).

**2.  <u>Section 302(a)(3)(ii)</u>**

To establish jurisdiction pursuant to § 302(a)(3)(ii), a plaintiff must demonstrate that "(1) the defendant's tortious act was committed outside New York;" "(2) the cause of action arose from that act;" (3) the "act caused an injury to a person or property in New York;" (4) "the defendant expected or should reasonably have expected that his or her action would have consequences in New York;" and (5) "the defendant derives substantial revenue from interstate or international commerce." *Penguin Grp. (USA) Inc. v. Am. Buddha,* 640 F.3d 497, 498–99 (2d Cir. 2011).

Here, although Plaintiff alleges that the extortion attempt occurred during the meeting in Germany, it does not allege that it suffered any injury in New York as a result of the extortion. In fact, Plaintiff broadly claims that "MWI has lost clients and business opportunities as a direct result of the repeated false representations of Defendants" and that it lost a $5 million investment.  Complaint ¶¶ 55-56.  These conclusory allegations without ties to New York are insufficient to confer jurisdiction.  *See Indelible Media Corp. v. Meat & Potatoes, Inc.*, No. 12 Civ. 0978 (GBD), 2012 WL 3893523, at *5 (S.D.N.Y. Sept. 7, 2012) (dismissing claims for lack of jurisdiction because "[plaintiff] has not alleged any actual or reasonably expected clients or profits that it lost or could lose in New York as a result of the [defendants'] actions").  Moreover, Plaintiff has not alleged that Schulte could have reasonably expected that his actions would result in consequences in New York, especially given that Plaintiff is a Nevada corporation and that Tabaczek is a citizen and resident of Germany.  *Buccellati Holding Italia SPA v. Laura*

11

*Buccellati, LLC*, 935 F. Supp. 2d 615, 627 (S.D.N.Y. 2013) (dismissing plaintiff's claim due to lack of personal jurisdiction upon concluding that the evidence did not suggest that defendants should have expected their conduct to have consequences in New York when their out-of-state actions were not directed at New York); *Waggaman v. Arauzo*, 985 N.Y.S.2d 281, 283 (N.Y. App. Div. 2d Dept. 2014) (dismissing claim for lack of personal jurisdiction when the "plaintiff failed to establish that the defendant expected or should reasonably have expected the act to have consequences in New York").  Nor has Plaintiff alleged that Schulte derives substantial revenue from interstate or international commerce.  The Complaint is entirely silent as to the scope or international reach of Schulte's law practice and the revenue Schulte's law firm receives. Schulte acknowledges the Complaint's silence and asserts that he has no business dealings in New York.  Schulte Decl. ¶¶ 3, 17.  Thus, the Court finds that § 302(a)(3)(ii) is not a valid basis for jurisdiction.

### 3.  Due Process

Plaintiff alleges that the Court's exercise of jurisdiction would also comport with due process.  Response in Opposition ("Pl. Opp.") (Doc. 74) at 9-10.  The Due Process Clause of the Fourteenth Amendment permits New York courts to confer jurisdiction over a non-resident defendant when the defendant has "minimum contacts" with the state.  *See e.g.*, *Merck Eprova AG v. Gnosis S.p.A.*, No. 07 Civ. 5898 (RJS), 2008 WL 5336587, at *6 (S.D.N.Y. Dec. 12, 2008) (finding that defendant's minimum contacts relating to due process were satisfied when the defendant was involved in a national market and sold at least one product to New York). Specifically, Plaintiff asserts that the minimum contacts requirement is satisfied because Schulte's deliberate tortious conduct was "plainly designed to (and did) cause damage to Plaintiff's business operations within the United States."  Pl. Opp. at 9-10, 12.  This "effects test"

12

allows courts to confer jurisdiction over a non-resident defendant when their conduct occurs entirely outside of the forum, the only contacts within the forum are the conduct's effects, and the defendant "expressly aimed its conduct at the forum."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013) (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)).

Because the Court finds that, here, personal jurisdiction as to Schulte is proscribed by the laws of New York, the Court need not engage in a due process analysis.  *Penguin Grp.*, 609 F.3d at 35 ("[A]nalysis under Due Process principles is not necessary unless there is long-arm jurisdiction under the applicable state statute."); *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 622 (S.D.N.Y. 2015) (same).  Moreover, Plaintiff makes no assertion that any "effects" were felt in New York.  However, even assuming that a New York statute confers jurisdiction over Schulte, Plaintiff has failed to show that jurisdiction comports with due process.  Not only has Plaintiff not adequately alleged that Schulte has any contact with New York, but it also fails to allege that it specifically suffered harm in New York as a result of Schulte's allegedly tortious conduct.  Accordingly, Schulte's motion to dismiss for lack of personal jurisdiction is GRANTED.

**b.  _Forum Non Conveniens_**

In the alternative, Schulte argues that the case should be dismissed on *forum non conveniens* grounds.  However, because the Court finds that dismissal for lack of personal jurisdiction is warranted, the Court need not determine whether dismissal is also appropriate pursuant to *forum non conveniens.  See Felske v. Hirschmann*, No. 10 Civ. 8899 (RMB), 2012 WL 716632, at *4 (S.D.N.Y. Mar. 1, 2012) (disregarding defendants' *forum non conveniens* motion after granting defendants' motion to dismiss for lack of personal jurisdiction).

13

Nevertheless, this Court has already considered arguments in this case for dismissal on the basis of *forum non conveniens*. In its motion, GoMoPa claimed, among other things, that Plaintiff's choice of forum was not entitled to deference because none of the operative facts occurred in New York. It also noted that all of the documentary evidence is written in Germany and that the individual Defendants all reside in Germany. After considering these arguments – most of which Schulte reiterates – the Court held that (1) Plaintiff's choice of forum was entitled to deference; (2) Germany is an adequate alternative forum; and (3) the balance of private and public factors did not weigh heavily in favor of dismissal. *See Matter of the Application of Mt. Whitney Investments, LLLP*, No. 15 Civ. 4479 (ER), 2016 WL 1737109 (S.D.N.Y. May 2, 2016).

## V. Conclusion

For the reasons set forth above, Schulte's motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of the Court is respectfully directed to terminate Schulte as a Defendant, and to terminate the motions, Docs. 71, 78.

It is SO ORDERED.

Dated: March 23, 2017
New York, New York

Edgardo Ramos, U.S.D.J.

14